IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LENA D. MORRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-3116 |
| | § | |
| TEXAS HEALTH AND HUMAN | § | |
| SERVICES COMMISSION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lena D. Morris, brings this action against defendant, the Texas Health and Human Services Commission ("THHSC") for race, sex, and age discrimination and for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, et seq., and for interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Pending before the court are Defendant's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 22), and Plaintiff Lena D. Morris' Motion for Leave to File Sur-Reply to Defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment ("Plaintiff's Motion for Leave to File Sur-Reply") (Docket Entry No. 29). For the reasons set forth below, Plaintiff's Motion for Leave to File Sur-Reply will be denied as moot, and Defendant's MSJ will be granted in part and denied in part.

## I.  Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56.  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  Id.  If, however, the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. Id.  "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.

-2-

## II. **Undisputed Facts**[1]

In December of 2014 Lisa Pietrzyk ("Pietrzyk"), Director of the Office of Inspector General ("OIG") for the THHSC, offered Morris, an African-American woman, an Investigator VI position at the Electronic Benefits Transactions ("EBT") Unit in Houston.[2] Morris accepted the offer and began working for the THHSC as a probationary employee on January 9, 2015.[3] Morris initially reported to Ronald Mendoza ("Mendoza"), manager of OIG's Houston office.[4] Within Morris' first month of employment, Orlando Mayers ("Mayers") was hired to manage the EBT Unit, and he became Morris's direct supervisor even though he was based in Austin.[5]

---

[1]See Facts, Plaintiff's Original Petition, Docket Entry No. 1-4, pp. 4-6; Factual Background, Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's Brief in Support of MSJ"), attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 8-10; and Factual Background, Plaintiff Lena D. Morris' Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 26, pp. 5-12 (citing Declaration of Lena D. Morris ("Morris Declaration"), Exhibit A to Plaintiff's Response, Docket Entry No. 26-1). Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system.

[2]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 3 ¶ 7-8. See December 23, 2014, Letter from Lisa Pietrzyk to Lena D. Morris, Exhibit B to Plaintiff's Response, Docket Entry No. 26-2, p. 14.

[3]Id. ¶ 10 and Oral Deposition of Lena D. Morris ("Morris Deposition"), p. 91:2-4, Exhibit 18 to Defendant's MSJ, Docket Entry No. 22-2, p. 93 (acknowledging that she was a probationary employee).

[4]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 3 ¶ 11.

[5]Id. at 4 ¶ 16.

On her first day of work Morris provided Mendoza a Certification of Health Care Provider for Family Member's Serious Health Condition intended to show that she qualified for intermittent FMLA leave to care for her daughter. Morris filled out, signed, and dated the first page on January 8, 2015, stating:

> My leave will be sporadic and unscheduled at times. I will have to transport her to various doctor and therapist appointments. And during the time that she is incapacitated, I will need to stay with her. I have to tend to her daily needs during these times.[6]

The subsequent pages had been filled out, signed, and dated by her daughter's health care provider on September 24, 2014.[7]

Two other employees of the EBT Unit in Houston both started their employment at or near the time that Morris started her employment there: Rick McDougald ("McDougald") (Investigator VI) and Steve Lightfoot ("Lightfoot") (Investigator V).[8] Although Lightfoot's position as Investigator V was a lower-ranked position than Morris's and McDougald's position, Lightfoot earned $63,139.00 per annum while Morris and McDougald earned $52,800.[9]

---

[6]Id. at 3 ¶ 11 (citing Attachment 1, Docket Entry No. 26-1, p. 9).

[7]Certification of Health Care Provider for Family Member's Serious Health Condition, Attachment 1 to Morris Declaration, Docket Entry No. 26-1, pp. 10-12.

[8]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 3 ¶ 12.

[9]Id. ¶ 8 (Morris's salary) and 4 ¶ 14 (Lightfoot's salary) (citing Government Salaries Explorer, Attachment 2 to Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, pp. 14-15).

On January 14, 2015, Mendoza sent Pietrzyk an email stating:

[Morris] provided FMLA documentation for a family member (daughter) that she occasionally takes to the doctor. She has requested the following days off or adjustments of hours listed:

The week of 1/20/15 - FMLA - Would like to work 11 hours on 1/21, 1/22 and 10 hours on 1/23.

The week of 02/20/15 - Would like to work 4-10 hour[] days to avoid taking leave.

The week of 02/26/15-02/27/15 Annual Leave - Would like to work 3-10 hour days for that week.

The week of 03/03/15 - FMLA - Would like to work 4-10 hour[] days to avoid taking leave.

The week of 03/13/15 - FMLA - Would like to work 4-10 hour[] days to avoid taking leave.

These are appointments that are already scheduled. She stated if other days come up unexpectedly, she will inform us. She also indicated the reason she would like to avoid having to take leave is due to if her daughter is hospitalized, she will have the leave to cover her being out.[10]

On January 15, 2015, Pietrzyk and Mayers engaged in an exchange of emails about Morris's requests for leave that began when Pietrzyk responded to Mayers' email from the day before by asking, "Have all required documents been received and who reviewed them? Is Lena Morris EBT or FI?"[11] Mendoza replied by attaching Morris's FMLA documents to an email that he sent to Pietrzyk stating, "She is with EBT."[12] Pietrzyk responded by asking, "Does

---

[10]Exhibit B to Plaintiff's Response, Docket Entry No. 26-2, pp. 11-12.

[11]Id. at 11.

[12]Id.

this new employee meet the FMLA Ch 5 eligibility?"[13]  Mendoza replied:  "[Morris] has been employed with the State 17 years.  She is a transfer from TWC.  She stated the FMLA was approved by the other agency she was employed with.  If more information is needed, please let me know."[14]

Later the same day, _i.e._, January 15, 2015, Pietrzyk forwarded the email chain about Morris's FMLA requests to James Williams, Human Relations Manager, in the THHSC's Human Resources Section along with the following message:  "Does this FMLA flex schedule seem consistent with our agency?  My understanding is that she's to take leave and it[] codes as FMLA.  OIG doesn't allow probationary employees to participate in flex schedule[s] like 10 hour days unless they pass probation."[15]  Williams responded:

> I believe we are dealing with two separate policies. Supervisory approval to work or change a flexible schedule is required according to the HR Policy referenced below.
>
> **Flex Schedule**
>
> (Revised 5/1/04)
>
> A flex schedule is a work schedule that allows flexibility in the employee's arrival and departure times.  An employee must receive supervisory approval to work or change a flexible schedule.  Office coverage must be maintained under the flex schedules.  State offices must be open between 8 am and 5 pm, Monday through Friday, and remain open during the noon hour of each

---

[13]_Id._ at 10.

[14]_Id._

[15]_Id._

> workday with at least one person on duty to accept calls,
> receive visitors, and transact business.
>
> The FMLA should be invoked for the employee's leave
> related to the WH-380-F for her daughter's medical
> condition. We can discuss further if needed.[16]

Pietrzyk forwarded Williams' response to Mayers.[17]

On March 17, 2015, Morris and Mayers exchanged text messages regarding Morris's intent to be out of the office on Wednesday, March 18th; Mayers told Morris that he thought she intended to be out of the office on March 17th and that she needed to work eight hours on March 18th.[18]

On March 23, 2015, Mayers sent an email to Cleve Tolver, Human Resources Specialist IV, in THHSC's Employee Relations Unit, asking Tolver to call him to discuss documents regarding Morris's request for time off.[19] Later that day Tolver sent Mayers an email stating:

> FMLA can be granted for the employee to care for the
> eligible family member.
>
> I did notice that the doctor completed the form back in
> September of 2014. I would like to suggest that you
> obtain new information and start the FMLA based on what
> the new information states.
>
> 1st, check to see if the employee has 12 months of state
> service and has worked 1250 hours within the last year.
> If the employee meets these requirements, provide the

---

[16]Id. at 9.

[17]Id.

[18]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 5 ¶ 22 (citing Attachment 4, Docket Entry No. 26-1, pp. 24-30).

[19]Exhibit 4 to Defendant's MSJ, Docket Entry No. 22-2, p. 23.

employee with form WH381 to inform them they meet the requirements. Then, provide them with WH380E to return to you in 15 days.

When you receive the new WH380E, scan it to me and we can discuss.[20]

On March 24, 2015, Morris sent an email to Mayers titled "Harassment over FMLA and Time," which Mayers forwarded to Pietrzyk the same day. In pertinent part the March 24, 2015, email states:

. . . You indicated on Friday that you had already fired Gina, the only other woman in your three units for missing too much work. It is distressing when a supervisor threatens one's job. I believe this because you clearly stated that you are out to fire me for not having, as you put it, ". . . worked a full week since you have been here." This was said by you despite my having used Flex Time to make up my hours and work a 40 hour week, all previously approved by you. I was told when I first came on board that my permanent manager would work with me on my leave situation. I requested to work 7:00 a.m. to 3:30 p.m. since that was my schedule at the agency that I transferred from. I was told that once Steve started I would be able to work the "Flex Time" hours where I was working 7:00 a.m. - 3:30 p.m., the same as Rick has been allowed to work all along. You claim that Lisa Pietryzk [sic], the Director of the division, is the one telling you that I cannot do this now because I am on probation; yet she is the one who approved Rick's Flex Time. Why the double standard? Why do women not get the same flexibility as the men? Is the real reason you want to fire me is to be rid of all of the women, or is it that you just don't like the idea of my being able to take off to take my "special needs daughter" to her appointments?

This morning you called to inform me that you received an email that states that even though I turned in my FMLA paperwork when I began working here that I am not on FMLA. You then gave the reason why I am not on FMLA as being that the paperwork that I turned in was done in September. Lisa has had the paperwork since I began and now management waits until almost three months

---

[20]Id.

later to tell me that it needs to be up-to-date. This is unacceptable. And you are saying that only you can designate my Sick leave as FMLA in CAPPS. This is a blatantly transparent attempt to circumvent the FMLA protections that are afforded me. . .

The Agency knew prior to my hire that I was a single mom of a special needs child. I left two voice mail messages for Lisa before showing up to report to work, that were never answered by her so that I could discuss this with her before coming on board. I have kept you informed of when my daughter's doctor's appointments have been, as well as having filed all of the appropriate FMLA paperwork with the agency for her condition. As a matter of fact, I have forwarded to you several times the FMLA paperwork that I have filed with the agency because you said that Lisa did not have it and wanted you to get it from me. . .

You keep referring to Texas being an "At Will" state which allows you to fire me for any, or even no reason at all. As I told you, if you are firing me for time missed while taking my child to the doctor, or anything else covered by FMLA, you will be in violation of Federal Law, which supersedes state law and agency policy/memorandums. We have discussed these FMLA issues several times, and most of the time that I was off for my daughter; I made up the time by fulfilling my 40 hours per week with your full knowledge and permission.

As I stated to you on Friday, I am feeling harassed at this point with the repeated requests for the same FMLA paperwork, and your threats to fire me because of my taking off to care for my daughter and take her to her doctor's appointments. At this point, I am afraid that you will say that you are firing me for a made up reason in an attempt to circumvent the rationale behind the FMLA protections. . .

I did not choose for my daughter to have the problems that she does. I have had to work and care for her virtually on my own. If every agency or business behaved in the way that you are acting then there would be no work available for parents of special needs children. . . .

Per our conversation, when you informed me that I will not be able to use "Flex Time," you also said that I will just have to use my personal leave time, leaving

me with no cushion the next time my daughter is hospitalized. That is your right to do so, but you cannot deny my right to take my child to the doctor or hospital as long as I have filed the proper FMLA paperwork, as I have. You also stated that you may send me to El Paso, and if I declined then that would be another reason that I can be fired. I know that traveling is a job requirement, and would be happy to travel anywhere. I would just make arrangements for my daughter. . . .[21]

On March 27, 2015, Morris filed an internal complaint with the THHSC's Office of Civil Rights, alleging that she was being discriminated against because of her sex, female,[22] and that she was being subjected to "a campaign of harassment due to the dislike of my bringing in FMLA paperwork on my first day of employment. I was asked to provide the paperwork on no less than three occasions."[23]

On April 6, 2015, Tolver and Mayers engaged in an exchange of emails about Morris's FMLA eligibility in which Tolver informed Mayers that he had heard back from all the agencies, that Morris had previously been certified for FMLA with the Office of Injured Employee Counsel, and that Mayers should provide Morris with form WH380E/F and give her the form WH381 once she was determined to meet requirements.[24]

---

[21]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, pp. 5-6 ¶¶ 24-25 (citing Attachment 5, Docket Entry No. 26-1, pp. 31-34).

[22]Id. at 6-7 ¶ 29 (citing Attachment 9 to Morris Declaration, Docket Entry No. 26-1, pp. 52-54).

[23]Attachment 9 to Morris Declaration, Docket Entry No. 26-1, p. 54.

[24]Exhibit 4 to Defendant's MSJ, Docket Entry No. 22-2, pp. 20-22.

Also on April 6, 2015, Mayers and Pietrzyk responded to the email that Morris sent to Mayers on March 24, 2015, and Mayers forwarded to Pietrzyk. In pertinent part, Mayers denied making many if not most of the statements that Morris attributed to him, denied having approved Morris's use of flex time to make up time off, i.e., flexing within the week, and asserted that he had not denied Morris sick leave. Pietrzyk reminded Morris that they had previously discussed that OIG work hours are eight hours between 7:00 a.m. and 6:00 p.m. and could not end earlier than 4:00 p.m, flex time within a day must be preapproved, and probationary staff are not eligible to work a compressed work week. Pietrzyk referred Morris to Tolver for FMLA questions, and advised Morris to make arrangements for childcare ahead of time because her position required up to 60% travel that could be required on a daily, weekly, monthly, or annual basis based on business need.[25]

On April 8, 2015, Tolver sent Mayers an email confirming that Morris "meets the requirements for FMLA."[26]

On April 29, 2015, Morris raised her voice to Mayers during a meeting when Mayers informed her that she would have to work late.[27] On April 30, 2015, Mayers sent Morris an email "to recap my

---

[25]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 6 ¶ 26 (citing Attachment 6 to Morris Declaration, Docket Entry No. 26-1, pp. 36-40).

[26]Exhibit 4 to Defendant's MSJ, Docket Entry No. 22-2, p. 20.

[27]Morris Deposition, pp. 95:5-23, Exhibit 18 to Defendant's MSJ, Docket Entry No. 22-2, p. 94.

discussion concerning the outburst to instructions regarding working late,"[28] in which Mayers wrote: "[P]lease refrain from any open opposition to instructions given by management. Please discuss in private any concerns/issues you may have with the directives."[29] On May 7, 2015, Morris replied with an email to Mayers copied to Pietrzyk in which Morris agreed that "we should keep our disagreements private,"[30] but complained, "I find it very disturbing that you want me to talk to you in private so there will be no witnesses, yet you hold your confrontational meetings with me in the presence of multiple male staff."[31]

On May 8, 2015, Mayers called Morris to a meeting at which he gave her a termination letter,[32] stating in pertinent part:

> After much deliberation, it has been determined that you are not suited for the assigned Investigator VI position. I regret to inform you that your last day of employment with [THHSC-OIG] will be May 08, 2015.
>
> The Department's policy regarding probationary employees is contained in Health & Human Services Human Resources Manual, Chapter 11, which states in part:
>
> "Probationary employees may be dismissed for any non-discriminatory reason at any time during the employees' probationary period (first six months of employment)

---

[28]Exhibit 10 to Defendant's MSJ, Docket Entry No. 22-2, p. 44.

[29]Id.

[30]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 6 ¶ 28 (citing Attachment 8, Docket Entry No. 26-1, pp. 48-50).

[31]Attachment 8 to Morris Declaration, Docket Entry No. 26-1, p. 50.

[32]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 7 ¶ 30 (citing Attachment 10, Docket Entry No. 26-1, pp. 55-56).

. . . if it is determined the employee was not suited for the assigned position.  In these cases:

- The employee will receive written notice of discharge, which states that employment is terminated because the hiring authority determined the employee was not suited for the assigned position,

- No cause will be cited . . .[33]

On November 23, 2015, the THHSC's Office of Civil Rights sent Morris a letter stating that its investigation of her March 27, 2015, internal complaint did not substantiate her allegations.[34]

### III.  Plaintiff's Motion to File Sur-Reply

Asserting that "Defendant has attempted to raise in its Reply Brief [] arguments that Defendant did not raise in its Dispositive Motion filing, including, but not limited to, a different legal argument for seeking to have Plaintiff's FMLA Retaliation Claim dismissed as a matter of law,"[35] Morris seeks leave to file a sur-reply.  Asserting that its reply did not raise new legal theories or present new evidence, the THHSC opposes Morris's motion for leave to file sur-reply.[36]  After carefully reviewing the THHSC's Reply in Support of Motion for Summary Judgment, the court

---

[33]Attachment 10 to Morris Declaration, Docket Entry No. 26-1, p. 56.

[34]Attachment 11 to Morris Declaration, Docket Entry No. 26-1, pp. 57-61).

[35]Plaintiff's Motion for Leave to File Sur-Reply, Docket Entry No. 29, p. 1.

[36]Defendant's Opposition to Plaintiff's Motion for Leave to File Sur-Reply, Docket Entry No. 31, p. 2.

concludes that it neither raises new legal theories nor presents new evidence. Moreover, review of Morris's proposed sur-reply shows that she seeks only to clarify applicable law as stated in two cases: <u>Burlington Northern & Santa Fe Railway Co. v. White,</u> 126 S. Ct. 2405 (2006), and <u>Lanier v. University of Texas Southwestern Medical Center,</u> 527 F. App'x 312 (5th Cir. 2013).[37] Because the THHSC cited both of these cases in its original summary judgment brief, and because the court does not find the clarifications offered in Morris's sur-reply necessary to rule on Defendant's MSJ, Morris's Motion for Leave to File Sur-Reply will be denied as moot.

## IV.  Defendant's Motion for Summary Judgment

The THHSC argues that it is entitled to summary judgment on Morris's Title VII and FMLA claims because she is unable to establish a prima facie case and, alternatively, because Morris was discharged for the legitimate, nondiscriminatory reason of insubordination. Morris responds that fact issues preclude granting the THHSC's motion for summary judgment on either her Title VII or her FMLA claims.

### A.  Title VII Claims

Morris asserts Title VII claims for race and sex discrimination and for retaliation for having engaged in activity

---

[37]Plaintiff Lena D. Morris's Sur-Reply to Defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment, Docket Entry No. 29-1, pp. 3-5.

protected by Title VII. Morris alleges that she was paid less and not provided the same opportunity to use flex time as her non-African-American male counterparts, and that when she opposed the THHSC's discriminatory treatment she suffered a hostile environment and her employment was terminated in retaliation for having complained of discrimination.[38] In response to Defendant's MSJ, Morris argues that "she was discriminated against with regards to pay because of her race and gender,"[39] and that her "Title VII retaliation claim cannot be dismissed as a matter of law."[40]

### 1. Applicable Law

Title VII protects individuals from discrimination by an employer based on the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish claims for employment discrimination in violation of Title VII by using direct evidence or by using the indirect method of proof set forth in <u>McDonnell Douglas Corp. v. Green,</u> 93 S. Ct. 1817 (1973). <u>See Seaman v. CSPH, Inc.,</u> 179 F.3d 297, 300 (5th Cir. 1999). Direct evidence "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption."

---

[38]Plaintiff's Original Petition, Docket Entry No. 1-4, pp. 6-8 ¶¶ 24-42.

[39]Plaintiff's Response, Docket Entry No. 26, p. 24.

[40]<u>Id.</u> at 26. Morris also alleges a Title VII claim for age discrimination, which is not actionable under Title VII. Morris has failed to offer either evidence or argument in support of her discrimination claims based on age or use of flex time. The court therefore concludes that Morris has abandoned these claims.

Rachid v. Jack In The Box, Inc., 376 F.3d 305, 310 n.6 (5th Cir. 2004). Morris relies on the McDonnell Douglas framework to establish her Title VII claims.[41] Morris's initial burden under the McDonnell Douglas framework is to establish a prima facie case. 93 S. Ct. at 1824. If she establishes a prima facie case, the burden shifts to the THHSC to articulate a legitimate, nondiscriminatory reason for its actions. Id. If the THHSC meets this burden, Morris must adduce evidence capable of establishing that the THHSC's stated reasons are false and are, instead, pretexts for discrimination. Id. at 1825.

2.  Application of the Law to the Undisputed Facts

    (a)  The THHSC is Entitled to Summary Judgment on Morris's Claims of Race and Gender Discrimination.

The THHSC argues that Morris cannot prove that it discriminated against her on the basis of race and/or gender by paying her less than male employees who were not African-American.[42] Morris argues that she has adduced sufficient evidence to raise a genuine issue of material fact for trial.[43]

To establish a prima facie case of Title VII discrimination based on pay discrimination Morris must show "(1) 'that [she] was

_____

[41]Plaintiff's Response, Docket Entry No. 26, p. 24 (citing McDonnell Douglas, 93 S. Ct. at 1817).

[42]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 21-23. See also Defendant's Reply in Support of Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 27, pp. 17-18.

[43]Plaintiff's Response, Docket Entry No. 26, pp. 26-27.

a member of a protected class'; (2) 'that [she] was paid less than a non-member'; and (3) 'that [her] circumstances are '"nearly identical" to those of' the better-paid non-member." Mengistu v. Mississippi Valley State University, 716 F. App'x 331, 334 (5th Cir. 2018) (per curiam) (quoting Taylor v. United Parcel Service, Inc., 554 F.3d 510, 522-23 (5th Cir. 2008)).

The THHSC does not dispute that Morris has satisfied two of the three elements required to establish a prima facie case of pay discrimination based on sex and/or race, i.e., Morris belongs to two protected classes (African-American and female), and Morris was paid less than a non-member of her protected classes, i.e., Steven Lightfoot. The THHSC argues that Morris is unable to satisfy the third element of a prima facie case because

> Director Pietrzyk hired two men during the same timeframe as Morris to work in the same newly-created Electronic Benefits Transfer ("EBT") unit: Rick McDougald and Steven Lightfoot. . . At the time of hire, Morris and McDougald had no previous work experience with HHSC agencies and their starting salaries were therefore established at $52,800.00. . . Lightfoot transferred into the EBT Unit from another HHSC agency and possessed approximately 16 years of experience with HHSC agencies. . . Lightfoot earned a salary of $63,183.84 not because of his gender but based wholly on cumulative pay increases gained over the course of his lengthy career with HHSC. . . Morris's claim fails because she received the same starting salary as her similarly-situated male counterpart and she cannot show that any other alleged pay disparity is the result of discriminatory animus.[44]

---

[44]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 22-23. See also Defendant's Reply, Docket Entry No. 27, p. 17 (arguing that Morris "cannot establish a prima facie case of discriminatory pay because Lightfoot is not a suitable comparator").

In support of its argument the THHSC cites the Declaration of Lisa Campos Garza, formerly known as Lisa Pietrzyk, and the deposition testimony of Ronald Mendoza. Campos Garza testified that

> [i]n addition to Lena Morris, I also hired two male employees into the EBT Unit during the same timeframe, Rick McDougald and Steven Lightfoot. Rick McDougald and Lena Morris were hired at the same starting salary of $52,800.00. Unlike Ms. Morris and Mr. McDougald, Steven Lightfoot transferred from another HHSC agency, had years of experience within HHSC agencies, and was already earning more than $52,800.00. As a result, Steven Lightfoot was hired at an annual starting salary of $63,138.84.[45]

Mendoza testified that Lightfoot had prior experience as an investigator and came from the Fatality Unit at Child Protective Services, which is an HHSC agency.[46]

Morris does not dispute that her circumstances were not nearly identical to Lightfoot's circumstances. Instead Morris argues that THHSC's stated reasons for paying Lightfoot a higher salary are pretextual because she had 17 years' experience as a state employee and had worked for the THHSC's predecessor agency, but was nevertheless paid less than Lightfoot who had a lower-ranking position. Morris also argues that the THHSC's stated reasons for the pay disparity between her and Lightfoot are pretextual because she was paid the same as McDougald who had no prior state

---

[45]Declaration of Lisa Campos Garza ("Campos Garza Declaration"), p. 2 ¶ 4, Exhibit 22 to Defendant's MSJ, Docket Entry No. 22-2, p. 225.

[46]Oral Deposition of Ronald Mendoza (mistitled Robert A. Mendoza) ("Mendoza Deposition"), pp. 74:17-75:4, Exhibit 21 to Defendant's MSJ, Docket Entry No. 22-2, p. 219.

experience, and she was paid less than the amount budgeted for her position.[47]  In support of her argument, Morris cites her own declaration stating that she "was first employed by the State of Texas in 1991 with the Department of Health Services ('DHS'), which was the predecessor agency to Defendant [THHSC],"[48] and a document that the THHSC provided during discovery showing that the salary budgeted for her position was more than the salary that she was offered and paid.[49]

The THHSC replies that Morris has acknowledged Lightfoot's investigative experience and transfer from within the THHSC, and that Morris does not dispute that Lightfoot earned more in his prior position than the THHSC paid her or McDougald.[50]  The THHSC also cites Campos Garza's deposition testimony that her decision regarding Morris's pay was not based solely on budgeted salary, but on Morris's skill set.[51]

---

[47]Plaintiff's Response, Docket Entry No. 26, pp. 25-26.

[48]Id. (citing Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 2 ¶ 2).

[49]Id. (citing Exhibit B to Plaintiff's Response, Docket Entry No. 26-2, p. 13).

[50]Defendant's Reply, Docket Entry No. 27, p. 16 (citing Morris Deposition, p. 60:7-22, Exhibit 18 to Defendant's MSJ, Docket Entry No. 22-2, p. 83).

[51]Id. at 17 (citing Oral Deposition of Lisa Campos Garza ("Campos Garza Deposition"), pp. 158:22-159:3, Exhibit 19 to Defendant's MSJ, Docket Entry No. 22-2, p. 140 ("At the point that I'm completing a 'Selection' box, I'm making decisions not based
(continued...)

Morris has not established her prima facie case because she has failed either to argue or to show "that [her] circumstances are 'nearly identical to those of'" Lightfoot, i.e., the comparator that she identifies as a better-paid non-member of her protected classes. Mengistu, 716 F. App'x at 334. There are key differences between Lightfoot and Morris that render Lightfoot an inappropriate comparison. Although Lightfoot started to work at the EBT Unit about the same time as Morris, Lightfoot was hired into a different position, i.e., the Investigator V position as opposed to the Investigator VI position that Morris held. Unlike Morris who had only worked for a predecessor of the THHSC for two brief periods of time in the 1990s,[52] Lightfoot transferred to the EBT Unit from another THHSC agency, i.e., the Fatality Unit at Child Protective Services, where he not only performed investigative work but also earned more than Morris was offered and paid by the THHSC. Moreover, the THHSC has provided evidence showing that Morris earned the same salary as McDougald, a person who like Lightfoot was outside of her two protected classes, but who unlike Lightfoot

---

[51] (...continued)
solely on the budgeted salary, I'm basing it off of her, if she's coming in as a transfer, just based upon her skill set, I'm making the recommendation at that point. I don't necessarily go into the Budget base spreadsheet and make decisions based upon just that Budget base number.")).

[52]Id. at 16 (citing Morris Deposition, pp. 15:23-16:15, Exhibit 18 to Defendant's MSJ, Docket Entry No. 22-2, p. 74 (stating that she worked for the Department of Human Services from approximately 1991 to approximately 1993, and then again for a few months in 1997).

-20-

was hired into the same position at approximately the same time, and like Morris had no prior experience with the THHSC. The court concludes that Morris has failed to carry her burden of establishing a prima facie case because she has failed to present evidence capable of establishing that her circumstances are nearly identical to those of Lightfoot. See Mengistu, 716 F. App'x at 334 (citing Taylor, 554 F.3d at 523). See also Herster v. Board of Supervisors of Louisiana State University, 887 F.3d 177, 185 (5th Cir. 2018). See also Ryburn v. Potter, 155 F. App'x 102, 109 (5th Cir. 2005) (per curiam) (recognizing that relevant differences in mail processing experience demonstrated that the plaintiff was not similarly situated to employees who had more experience).

Even assuming that Lightfoot is an appropriate comparator, Morris has failed to rebut the THHSC's nondiscriminatory explanations for their disparity in pay, i.e., Lightfoot's prior investigative experience working for the Fatality Unit at Child Protective Services, another THHSC agency, where he earned more than the amount that Morris was offered and paid.[53] Because these are legitimate, nondiscriminatory reasons for the pay disparity about which Morris complains, Morris bears the burden of showing that the THHSC's reasons for paying Lightfoot more than her were merely pretexts for race and/or gender discrimination. Morris has failed to carry her burden because she does not dispute that

---

[53]See Mendoza Deposition, pp. 74:17-75:4, Exhibit 21 to Defendant's MSJ, Docket Entry No. 22-2, p. 217.

Lightfoot had prior investigative experience with a THHSC agency which she did not have, or that Lightfoot was paid more at his prior position than she was paid by the THHSC. Morris's evidence that she had more state experience than McDougald and that she was not paid the full amount budgeted for her position is not evidence from which a reasonable fact-finder could conclude that the THHSC's stated reasons for paying Lightfoot more than her were false, unworthy of credence, or motivated by animus for her race and/or her gender.

> (b) The THHSC is Entitled to Summary Judgment on Morris's Title VII Retaliation Claim.

The THHSC argues that Morris cannot prove that it retaliated against her for complaining about discrimination by terminating her employment because Morris cannot establish a prima facie case and cannot cite facts capable of establishing that its legitimate, non-discriminatory reasons for terminating her employment were pretexts for retaliation.[54]  Morris argues that she has adduced sufficient evidence to raise genuine issues of material fact for trial.[55]

A prima facie case of retaliation requires Morris to prove that: (1) she participated in protected activity; (2) her employer took an adverse employment action against her; and (3) a causal

---

[54]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 24-27.  See also Defendant's Reply, Docket Entry No. 27, pp. 17-18.

[55]Plaintiff's Response, Docket Entry No. 26, pp. 26-27.

connection exists between her protected activity and the adverse action.  See <u>Hernandez v. Yellow Transportation, Inc.</u>, 670 F.3d 644, 657 (5th Cir.), <u>cert. denied,</u> 133 S. Ct. 136 (2012) (citing <u>Taylor,</u> 554 F.3d at 523).  Once Morris makes a prima facie case of retaliation, the burden shifts to the THHSC to "provide a 'legitimate, non-retaliatory reason for the adverse employment action.'" <u>Hernandez,</u> 670 F.3d at 657.  The burden then shifts back to Morris to prove that her protected conduct was the but-for cause of the THHSC's adverse employment decision.  <u>Id.</u>

The parties do not dispute that Morris has satisfied the first two prongs of a prima facie case of retaliation, <u>i.e.,</u> Morris complained of discrimination by filing an internal complaint with the THHSC's Office of Civil Rights[56] on March 27, 2015, alleging <u>inter alia</u> that she was being discriminated against because of her sex (female),[57] and that she suffered an adverse action when her employment was terminated on May 8, 2015.  The THHSC argues that Morris is unable to establish a prima facie case because there is no causal connection between her termination and her protected activity.  The THHSC argues:

> Morris identifies only two instances of alleged protected activity.  First, she cites an email that she sent to her supervisor, Orlando Mayers, on March 24,

---

[56]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, p. 24.

[57]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, pp. 6-7 ¶ 29 (citing Attachment 9 to Morris Declaration, Docket Entry No. 26-1, pp. 52-54).

2015. Appx. 027-029. The title of the email summarizes the nature of her complaint: "Harassment over FMLA and Time." *Id.* In her Original Complaint, Morris wrote that she "informed Mr. Mayers that she believed that she was being harassed because of her effort for FMLA designation." *Doc. 1-4* at ¶ 13. Of course, complaining about harassment regarding FMLA is not protected activity under Title VII.

The second instance of alleged protected activity is Morris's internal complaint, filed on March 27, 2015. Appx. 076 at 31:2-12 (confirming that the "internal complaint" referred to in her Original Complaint was filed on March 27). Morris alleges that "submission of her internal complaint only increased the severity and amount of the hostility that she suffered." *Doc. 1-4* at ¶ 19. Although OIG acknowledges that her internal complaint constitutes protected activity, both Pietrzyk and Mayers testified that they had no knowledge of Morris's internal complaint until after her termination. Appx. 116 at 71:4-10 ("Q. Do you know if Ms. Morris filed her complaint while she was still an employee at OIG? A. I don't know. Q. Do you recall how long after Ms. Morris had separated from OIG that you first learned about the complaint? A. It was very soon after."); Appx. 184 at 103:25, 104:1-3 ("Q. . . . Were you aware that Ms. Morris had filed a civil rights complaint about the way she was being treated in OIG? A. No."). In fact, Morris testified that she was notified of her termination at 11:00 a.m. on May 8, 2015, but OIG management did not receive notice that Morris filed an internal complaint until hours after her dismissal, at approximately 2:00 p.m. that afternoon. Appx. 091 at 91:4-21 (confirming that termination occurred at 11:00 "in the morning" on "May 8th"); Appx. 056.[58]

"Appx. 56" on which the THHSC relies as evidence that Morris's supervisors did not receive notice that she had filed an internal complaint until after they had terminated her employment is an email from Verna Neal, Civil Rights Manager, to Mayers and Pietrzyk on Friday, May 8, 2015, at 1:52 p.m., stating:

---

[58]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 24-25.

This is notice that Lena Morris filed an Employment Discrimination Complaint with the Health and Human Services Commission (HHSC) Civil Rights Office (CRO) on March 27, 2015. The details of her complaint are explained in the attached notice.

Brian Henry, Civil Rights Specialist, is assigned to investigate the complaint. Please provide a written response to the allegations in Ms. Morris' complaint to the CRO by Monday, June 1, 2015.[59]

Morris does not dispute that she has failed to show a causal connection between her March 27, 2015, internal complaint and her termination because she has failed to cite evidence showing that her supervisors knew about the internal complaint before they terminated her employment. See Tureaud v. Grambling State University, 294 F. App'x 909, 914 (5th Cir. 2008) (per curiam) ("To establish a 'causal link' [between] the protected activity and the adverse employment decision, the evidence must demonstrate that the decision maker had knowledge of the protected activity."). Morris argues instead that she engaged in protected activity by complaining of gender discrimination in an email exchange that she had with Mayers and Pietrzyk from March 24 through April 10, 2015, and in an email that she sent to Mayers and Pietrzyk on May 7, 2015.[60] Citing Evans v. City of Houston, 246 F.3d 344 (5th Cir. 2001), Morris argues that her Title VII retaliation claim cannot be

---

[59]Exhibit 14 to Defendant's MSJ, Docket Entry No. 22-2, p. 58.

[60]Plaintiff's Response, Docket Entry No. 26, p. 26 (citing Morris Declaration, Exhibit A to Plaintiff's Response, p. 5 ¶¶ 25-28, Docket Entry No. 26-1, p. 6 and Attachments 5-8 thereto, Docket Entry No. 26-1, pp. 31-50).

dismissed as a matter of law because this activity was closely proximate in time to her termination on May 8, 2015.[61]  In <u>Evans</u> the Fifth Circuit held that "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation," and that "'a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.'"  <u>Id.</u> at 354.

Title VII provides that an employee has engaged in protected activity if she has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "[A]n informal complaint may constitute protected activity for purposes of retaliation claims."  <u>Amanduron v. American Airlines,</u> 416 F. App'x 421, 424 (5th Cir. 2011) (per curiam) (citing <u>Hagan v. Echostar Satellite, L.L.C.,</u> 529 F.3d 617, 626 (5th Cir. 2008) (adopting the majority rule that "allows an informal, internal complaint to constitute protected activity" in the context of a Fair Labor Standards Act case).  The Fifth Circuit has noted, however, that the rule regarding the recognition of informal complaints as protected activity includes some "necessary qualifications to the majority rule," and that "not all 'abstract

---

[61]<u>Id.</u> (misstating the date of her termination as May 7, 2015, instead of May 8, 2015).

grumblings' or vague expressions of discontent are actionable as complaints." Hagan, 529 F.3d at 626 (quoting Hagan v. Echostar Satellite L.L.C., Civil Action No. H-05-1365, 2007 WL 543441, at *4 (S.D. Tex. February 16, 2007)). Thus, although the Fifth Circuit recognizes informal complaints as protected activity, the court must still determine whether the email exchange between Morris and her supervisors, Mayers and Pietrzyk, from March 24 through April 10, 2015, and the email that she sent to Mayers and Pietrzyk on May 7, 2015, constitute informal complaints of race and/or gender discrimination. Id.

Morris's email exchanges with Mayers and Pietrzyk from March 24 through April 10, 2015, and the email that Morris sent to Mayers and Pietrzyk on May 7, 2015,[62] focus on her efforts to gain permission to take FMLA leave. Morris's May 7, 2015, email to Mayers was sent in reply to an email from Mayers regarding the April 29, 2015, incident during which Morris raised her voice to Mayers. In the May 7, 2015, email Morris agreed that "we should keep our disagreements private,"[63] but complained, "I find it very disturbing that you want me to talk to you in private so there will be no witnesses, yet you hold your confrontational meetings with me in the presence of multiple male staff."[64] Neither the email

_____

[62]Id.

[63]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 6 ¶ 28 (citing Attachment 8, Docket Entry No. 26-1, pp. 48-50).

[64]Attachment 8 to Morris Declaration, Docket Entry No. 26-1, p. 50.

exchange nor the May 7, 2015, email complain about or oppose any practice made unlawful by Title VII.

Although some of the emails that Morris sent to her supervisors complain that McDougald, who is not a member of her protected classes, was allowed to work a flex schedule that she sought to work, and that Mayers treated her differently than he treated male employees by confronting her in the presence of other male employees, neither changing — or failing to change — her schedule, nor confronting her in the presence of other male employees constitutes an employment practice made unlawful by Title VII. See Johnson v. Halstead, 916 F.3d 410, 420 (5th Cir. 2019) (recognizing that a shift change with no change in total hours or compensation is generally not an actionable adverse employment action).

Moreover, the THHSC has presented evidence that probationary employees like Morris and McDougald were not permitted to work flex schedules, and that after Morris informed Pietrzyk that McDougald was working such a schedule, Pietrzyk immediately told McDougald he was not allowed to do so; and McDougald stopped working flex schedules.[65] The complaints of disparate treatment that Morris made in the emails she cites as evidence of protected activity are not informal complaints of race and/or gender discrimination but are

_____

[65]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, p. 22 (citing Campos Garza Declaration, Exhibit 22 to Defendant's MSJ, Docket Entry No. 22-2, p. 225 ¶ 5).

-28-

abstract grumblings and vague expressions of discontent that no reasonable employer would have understood as complaints or expressions of opposition to unlawful discrimination. See Stewart v. RSC Equipment Rental, Inc., 485 F. App'x 649, 652 (5th Cir. 2012) (per curiam) (first element of prima facie retaliation claim not met where "no reasonable employer would have understood [the activity] to be an expression of opposition to unlawful discrimination at work").

The court concludes that the THHSC is entitled so summary judgment on Morris's Title VII retaliation claim because Morris has failed to establish a prima facie case by citing evidence capable of proving a causal connection between her termination and the protected activity alleged in her Original Complaint, i.e. the filing of an internal complaint on March 27, 2015, and because the emails to her supervisors that she argues constitute protected activity are not informal complaints of race and/or gender discrimination but, instead, abstract grumblings and vague expressions of discontent that no reasonable employer would have understood as complaints or expressions of opposition to employment practices made unlawful by Title VII.

**B.  FMLA Claims**

Morris has asserted FMLA claims for interference and retaliatory termination.  Morris alleges:

> 23.  As described above, Plaintiff was an employee who was attempting to exercise her rights under the Family Medical Leave Act ("FMLA").

24. Her efforts to exercise her FMLA rights were the cause of harassment and discrimination.

25. Ultimately, HHSC-OIG terminated Ms. Morris's employment shortly after she made her first request for FMLA leave with HHSC-OIG. Ms. Morris has been unable to afford continued healthcare coverage.

26. Therefore, HHSC-OIG's actions in denying, harassing, and terminating Plaintiff's employment are a violation of the Family Medical Leave Act.[66]

The THHSC argues that it is entitled to summary judgment on Morris's FMLA claims because Morris received all of the FMLA leave that she requested, and because the THHSC had a valid, non-retaliatory reason for terminating her employment, i.e., insubordination.[67] Morris responds that the summary judgment record contains sufficient evidence to raise genuine issues of material fact for trial on both her FMLA retaliation and interference claims.[68]

1. Applicable Law

The FMLA allows eligible employees working for covered employers to take temporary leave for medical reasons without risk of losing their employment. See 29 U.S.C. § 2601(b)(1)-(2) and § 2612(a)(1).[69] The FMLA contains both prescriptive and

---

[66]Plaintiff's Original Petition, Docket Entry No. 1-4, p. 6 ¶¶ 23-26.

[67]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 12-19.

[68]Plaintiff's Response, Docket Entry No. 26, pp. 14-24.

[69]The FMLA applies to private-sector employers with fifty or more employees. 29 U.S.C. § 2611(4)(A)(i). An employee who has
(continued...)

proscriptive provisions which, together, seek to meet the needs of employees and their families and to accommodate the legitimate interests of employers. <u>See Hunt v. Rapides Healthcare System, LLC,</u> 277 F.3d 757, 763 (5th Cir. 2001), <u>abrogated in part on other grounds by Wheat v. Florida Parish Juvenile Justice Commission,</u> 811 F.3d 702, 706 n.1 (5th Cir. 2016). Prescriptive provisions of the FMLA allow an eligible employee to take up to twelve weeks of unpaid leave to care for herself or an eligible family member who has a serious health condition. 29 U.S.C. § 2612(a)(1)(C)). Proscriptive provisions of the FMLA make it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). The FMLA provides a private right of action for violation of its provisions. 29 U.S.C. § 2617.

Morris asserts FMLA claims for retaliation and interference.[70] The difference between the two claims is that an interference claim merely requires proof that the employer denied the employee rights under the FMLA, while a retaliation claim requires proof of

---

[69] (...continued)
worked for a covered employer for at least twelve months is eligible for FMLA leave. 29 U.S.C. § 2611(2)(A). THHSC does not dispute that it is a covered employer and that Riley was eligible for FMLA leave.

[70] Plaintiff's Original Petition, Docket Entry No. 1-4, p. 6 ¶¶ 23-26. <u>See also</u> Plaintiff's Response, Docket Entry No. 26, pp. 14-23 (arguing against summary judgment on retaliation claim), and pp. 23-24 (arguing against summary judgment on interference claim).

retaliatory intent. See DeVoss v. Southwest Airlines Co., 903 F.3d 487, 491 (5th Cir. 2018) (citing Cuellar v. Keppel Amfels, L.L.C., 731 F.3d 342, 348-51 (5th Cir. 2013) (Elrod, J., concurring)). See also Hunt, 277 F.3d at 763-71 (analyzing a plaintiff's claim for failure to award an FMLA entitlement separately from her retaliation claim). Absent direct evidence FMLA retaliation claims are analyzed under the burden shifting analysis articulated in McDonnell Douglas, 93 S. Ct. at 1817. See Hunt, 277 F.3d at 768 ("The Fifth Circuit applies the McDonnell Douglas framework to analyze retaliation claims under the FMLA, noting that 'there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.'"). Courts often cite cases analyzing claims made under other statutes to which the McDonnell Douglas framework applies. See Perkins v. Child Care Associates, 751 F. App'x 469, 474 (5th Cir. 2018) (per curiam). To survive summary judgment under this framework Morris must first establish a prima facie case of retaliation, after which the burden shifts to the THHSC to state a legitimate, non-retaliatory reason for terminating her employment. If the THHSC states such a reason, the burden returns to Morris to adduce evidence capable of establishing that the THHSC's stated reason is "merely pretext, or . . . — although true — is but one of the reasons for its conduct, another of which was discrimination." Id. See also Hunt, 277 F.3d at 768.

2.    <u>Application of the Law to the Undisputed Facts</u>

    (a)    FMLA Retaliation Claim

       **(1)  Morris Establishes a Prima Facie Case.**

To establish a prima facie case for FMLA retaliation Morris must demonstrate that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than a similarly situated employee who had not requested leave under the FMLA, or the adverse decision was made because she took FMLA leave. <u>See Hunt,</u> 277 F.3d at 768. <u>See also Perkins,</u> 751 F. App'x at 473 (citing <u>Acker v. General Motors, L.L.C.,</u> 853 F.3d 784, 790 (5th Cir. 2017) (quoting <u>Mauder v. Metropolitan Transit Authority of Harris County, Texas,</u> 446 F.3d 574, 583 (5th Cir. 2006), <u>cert. denied,</u> 127 S. Ct. 230 (2006))). "This showing requires a '"causal link" between the FMLA-protected activity and the adverse action.'" <u>Perkins,</u> 751 F. App'x at 473 (citing <u>Acker,</u> 853 F.3d at 790 (quoting <u>Richardson v. Monitronics International, Inc.,</u> 434 F.3d 327, 332 (5th Cir. 2005))). To establish a causal link the employee must show that the decision maker knew that the employee engaged in a protected activity and had a retaliatory motive. <u>Id.</u> The THHSC does not dispute that Morris was protected under the FMLA. Instead, the THHSC argues that Morris cannot establish that the harassment she experienced constitutes an adverse action, or that she was terminated in retaliation for taking FMLA leave.

(i)    Harassment

Unlike in the Title VII discrimination context, an adverse employment action in the retaliation context is not limited to ultimate employment decisions, such as hiring, granting leave, discharge, promotion, and compensation. McCoy v. City of Shreveport, 492 F.3d 551, 558 (5th Cir. 2007). Instead, the action can be something that "a reasonable employee would have found . . . [to be] materially adverse" or, in other words, would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Aryain v. Wal-Mart Stores, Texas LP, 534 F.3d 473, 484 (5th Cir. 2008) (quoting White, 126 S. Ct. at 2415). "The standard is objective, but 'the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'" Porter v. Houma Terrebonne Housing Authority Board of Commissioners, 810 F.3d 940, 945-46 (5th Cir. 2015).

The THHSC argues that Morris cannot establish a retaliation claim based on her harassment allegations because, even if true, the harassment she experienced did not constitute an adverse employment action.[71]  The THHSC argues that

> [t]o support her FMLA retaliation claim, Morris alleges that "Mr. Mayers expressed on several occasions that he did not believe that Ms. Morris's daughter's health condition was a 'serious health condition.'" Doc. 1-4 at ¶ 12.  Morris adds that she "was told that she would not be allowed to work a schedule that would have allowed her greater flexibility" and was "compared to a former HHSC-

_____

[71]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 15-17.

OIG female employee who had previously been terminated."
*Id.* at ¶¶ 14, 17. None of these meet the "adverse
employment decision" element of a prima facie retaliation
claim.[72]

Morris argues in response that she

> has demonstrated that she suffered through constant
> questioning of her eligibility to take FMLA leave, being
> required to submit her paperwork on multiple times, and
> threats of being terminated for taking off time for work
> — even though it had been approved. *See* Exhibit A,
> paras. 20 through 27 and Attachments thereto. Such
> conduct was regular and material enough to dissuade a
> reasonable person from making or supporting an allegation
> of discriminatory treatment for seeking her rights under
> the FMLA.[73]

While the Fifth Circuit has held that threats of pay reduction
that were unlikely to come to fruition were not sufficient to
support a retaliation claim because such threats would not dissuade
a reasonable employee from making or supporting a charge of
discrimination and therefore could not constitute a materially
adverse employment action, see Brandon v. Sage Corp., 808 F.3d 266,
271 (5th Cir. 2015), the Fifth Circuit has acknowledged "the
possibility that a realistic, drastic pay cut threat might deter
someone from supporting a discrimination charge in certain
circumstances." Id. & n.4 (citing Cox v. Onondaga County Sheriff's
Department, 760 F.3d 139, 148 (2d Cir. 2014) (employer's "threats
of false report charges . . . would often — even usually — be a
deterrent to reasonable employees making or supporting
discrimination claims"); Rivera v. Rochester Genesee Regional

---

[72]Id. at 16.

[73]Plaintiff's Response, Docket Entry No. 26, p. 18.

-35-

Transportation Authority, 743 F.3d 11, 26 (2d Cir. 2012) ("A reasonable juror could find both that [plaintiff's supervisor] threatened [plaintiff] with the loss of his job, and that this threat would dissuade a reasonable worker from making or supporting a charge of discrimination."). Here, the threats of job loss that Mayers made to Morris have come to fruition. A reasonable jury could therefore conclude that Mayers' threats of job loss were credible threats of adverse action that would have dissuaded a reasonable employee in Morris's position from making or supporting a charge of discrimination. See Johnson, 916 F.3d 410, 420. The court concludes therefore that Morris has satisfied her prima facie burden of citing evidence capable of establishing that the harassment she experienced constituted a materially adverse action for purposes of proving her FMLA retaliation claim.

### (ii)   Termination of Employment

The THHSC does not dispute that termination of employment is an adverse action that can support an FMLA retaliation claim. Instead, asserting that Morris received all of the FMLA leave that she sought, the THHSC argues that Morris cannot establish a retaliation claim based on her termination of employment because the termination decision was unrelated to the FMLA, and because Morris cannot show discriminatory intent.[74]   The THHSC argues

---

[74]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, pp. 17-18.

Morris also contends that OIG engaged in unlawful
discrimination and retaliation by terminating her
employment "shortly after she made her first request for
FMLA leave with HHSC-OIG." *Doc. 1-4* at ¶¶ 13, 24-26.
Here Morris relies not on the FMLA requests from January
2015 . . . but on "plans for taking leave under FMLA"
that she provided to Orlando Mayers in "late April/early
March." *Doc. 1-4* at ¶ 15. In a March 31, 2015 email she
requested the following:

> FMLA days - Daughter's appointments
>
> April 13 (8-12:30)
> April 14 (1:30-5)
> April 23 (2-5)
> April 27 (8-5)

I have doctor's appointments

> April 7 (8-5)

Appx. 023; *see also* Appx. 031 (approving sick leave on
April 22 for use on April 24).

Morris cannot establish her prima facie FMLA
retaliation case because she cannot show that she was
terminated on May 8, 2015 "because she sought protection
under the FMLA" on March 31. . . Just like her January
FMLA requests, OIG approved Morris's requests to use FMLA
in April. Appx. 088 at 79:3-10, 81:2-5; Appx. 053-054.
The approved FMLA request and termination are also
separated by five weeks.[75]

Citing <u>Strong v. University Healthcare System, L.L.C.,</u> 482 F.3d

802, 808 (5th Cir. 2007), the THHSC argues that "the Fifth Circuit

explicitly rejected 'the notion that temporal proximity standing

alone can be sufficient proof of but for causation' because '[s]uch

a rule would unnecessarily tie the hands of employers.'"[76]

---

[75]<u>Id.</u> at 17.

[76]<u>Id.</u> at 17-18.

-37-

To establish the third prong of a prima facie case of retaliation under the FMLA, Morris need only show that she was terminated because she took or sought to take FMLA leave. <u>Perkins,</u> 751 F. App'x at 473 (citing <u>Acker,</u> 853 F.3d at 790, and <u>Mauder,</u> 446 F.3d at 583). Morris does not have to show that the protected activity is the only cause of her termination. <u>Mauder,</u> 446 F.3d at 583. <u>See also Richardson,</u> 434 F.3d at 333 (FMLA claims only require a showing that retaliation was a motivating factor in the adverse action). Moreover, in <u>Mauder</u> the Fifth Circuit stated that "[w]hen evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the FMLA leave, and the termination." <u>Id.</u> The THHSC's reliance on <u>Strong</u> as support for its contention that Morris is unable to establish a prima facie case based on temporal proximity alone is misplaced. While the <u>Strong</u> court rejected "the notion that temporal proximity standing alone can be sufficient proof of but for causation," 482 F.3d at 808, the court recognized that "temporal proximity alone, when very close, can in some instances establish a *prima facie case* of retaliation." <u>Id.</u>

Morris relies on the temporal proximity between the time she took FMLA leave and her termination as evidence that the THHSC terminated her because she took FMLA leave. Morris argues that she

requested to take FMLA leave on multiple dates in April 2015, with the last dates being April 23rd and 27th. . . .

Plaintiff suffered an adverse employment [action] (i.e., termination) on May 8, 2015, a mere eleven and fifteen days after the last dates on which she was seeking FMLA leave. A seventeen-day period between when FMLA leave was taken and when the adverse employment action occurred has been recently ruled by a court in this district to be sufficiently close to satisfy the causation standard of a prima facie retaliation case. *See Garcia v. Penske Logistics, LLC*, 165 F. Supp. 3d 542, 559-60 (S.D. Tex. 2014). . . . The Fifth Circuit has even approvingly noted that a time lapse of up to **four months** has been found sufficient to satisfy the causal connection for summary judgment purposes. *See Evans v. City of Houston*, 247 F.3d 344, 354 (5ᵗʰ Cir. 2001).[77]

Citing <u>Shannon v. Henderson,</u> 275 F.3d 42 (5th Cir. 2001), Morris argues that

it is without dispute that Defendant's decision-makers were aware of Ms. Morris' requests and attempts to use FMLA leave. Both Ms. Pietrzyk, the OIG's Director of Investigations, and Mr. Mayers, Plaintiff's direct supervisor, acknowledged throughout their sworn deposition testimony that they were aware of Ms. Morris' requests for FMLA leave. . . . Furthermore, they had responded to Plaintiff's complaints about her perceived harassment and interference with her use of FMLA. . . . The Fifth Circuit has noted than an "employer's awareness of an employee's protected activity might be sufficient to establish the 'causal link' element of a prima facie case of retaliation."[78]

The Supreme Court has recognized that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" <u>Clark County School District v. Breeden,</u> 121 S. Ct. 1508, 1511

---

[77]Plaintiff's Response, Docket Entry No. 26, pp. 16-17.

[78]<u>Id.</u> at 17.

-39-

(2001) (per curiam). See also Swanson v. General Services Administration, 110 F.3d 1180, 1188 (5th Cir.), cert. denied, 118 S. Ct. 366 (1997) (close timing between an employee's protected activity and an adverse action may provide causal connection needed to establish a prima facie case). Morris took intermittent FMLA leave in April of 2015, and the THHSC terminated her employment on May 8, 2015, just over one week after the last day of her FMLA leave. The close temporal proximity between Morris's exercise of FMLA leave and her termination, coupled with Mayers' and Pietrzyk's knowledge of her protected activity, is sufficient to establish the causation element of a prima facie case of FMLA retaliation. See Richard v. Cingular Wireless LLC, 233 F. App'x 334, 338 (5th Cir. 2007) (two-and-one-half month period between protected activity and adverse employment action sufficient to establish causal connection needed for a prima facie case).

> **(2) The THHSC States Legitimate, Non-Retaliatory Reasons for Terminating Morris's Employment.**

Citing Strong, 482 F.3d at 808, for the recognition that "[e]mployers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace,"[79] the THHSC argues that even if Morris could establish a prima facie case, it is still entitled to summary

---

[79]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, p. 18.

judgment on her FMLA retaliation claim because it terminated her for legitimate, nondiscriminatory reasons.[80] The THHSC argues that

[a]mong these are the following:

> On 04/29/2015 while at the Houston OIG office located at 10103 Fondren, Lena Morris became insubordinate after being told that EBT members were expected to work late to complete required ADH training. Lena Morris yelled at supervisor (Orlando Mayers), shouting out loud that she was leaving the training and that she would just have to be written up. This incident occurred amongst the entire EBT group present. This is a violation according to the Health and Human Services Human Resources Manual (Chapter 4 Employee Conduct) (1, 2, 3, and 6).[81]

The Fifth Circuit has recognized poor performance and improper conduct including disruptiveness as legitimate, non-retaliatory reasons for terminating an employee's employment. McArdle v. Dell Products, L.P., 293 F. App'x 331, 340 (5th Cir. 2008). Accordingly, by citing evidence that Morris was insubordinate on April 29, 2015, the THHSC has articulated a legitimate, non-retaliatory reason for terminating her employment. The burden shifts to Morris to present evidence showing that the THHSC's stated reason for terminating her employment was a pretext to cover up an underlying retaliatory motive against her for taking FMLA leave. Perkins, 751 F. App'x at 474.

### (3) Morris Raises a Fact Issue as to Causation

Under the McDonnell Douglas burden-shifting framework, because the THHSC has produced evidence of a legitimate, nondiscriminatory

---

[80] Id.

[81] Id. at 18.

reason for the adverse employment action, Morris must introduce evidence that would enable a reasonable jury to find

> either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative).

Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted). Morris "may show pretext either through evidence of disparate treatment or by showing that [the THHSC's] proffered explanation is false or unworthy of credence." Caldwell v. KHOU-TV, 850 F.3d 237, 242 (5th Cir. 2017) (quoting Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010)). If Morris is successful in meeting her burden, the THHSC may still show that it is entitled to summary judgment under the mixed-motive theory by providing sufficient evidence to establish as a matter of law that it would have terminated Morris's employment despite its retaliatory motive. Richardson, 434 F.3d at 336. "The employer's final burden 'is effectively that of proving an affirmative defense.'" Id. at 333 (quoting Machinchick v. PB Power, Inc., 398 F.3d 345, 355 (5th Cir. 2005)). See also Ion v. Chevron USA, Inc., 731 F.3d 379, 389-391 (5th Cir. 2013) (discussing mixed-motive analysis in the context of an FMLA case).

### (i)   Pretext Alternative

Morris may establish pretext "by showing that the [THHSC's] proffered explanation is false or 'unworthy of credence.'"

Jackson, 602 F.3d at 379 (citing Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003)). Whether summary judgment is appropriate "depends on numerous factors, including 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." Piper v. Veneman, 183 F. App'x 407, 410 (5th Cir. 2006) (citing Reeves, 120 S. Ct. at 2109).

Morris has cited evidence capable of showing by a preponderance of the evidence that the THHSC's non-retaliatory reason for terminating her employment is pretextual for several reasons. First, Mayers' deposition testimony raises factual questions as to whether Morris's insubordination is the actual reason she was terminated. In pertinent part Mayers testified that he did not recall Morris's specific conduct on April 29, 2015, and did not recall Morris ever being insubordinate or disruptive, or engaging in conduct that would have given him reason to discipline her.[82] Mayers testified that he would not have taken Morris's April 29, 2010, outburst as insubordinate, disruptive, or worthy of termination.[83] Mayers also testified that he and Pietrzyk had

---

[82]Plaintiff's Response, Docket Entry No. 26, pp. 20-21 (quoting Oral Deposition of Orlando Trenell Mayers ("Mayers Deposition"), pp. 137:21-138:10, Exhibit C, Docket Entry No. 26-3, pp. 8-9). See also Mayers Deposition, pp. 137:21-138:10, Exhibit 20 to Defendant's MSJ, Docket Entry No. 22-2, p. 195.

[83]Mayers Deposition, p. 139:11-21, Exhibit 20 to Defendant's MSJ, Docket Entry No. 22-2, p. 195.

discussed Morris's FMLA leave more than once, Pietrzyk had asked him why Morris was taking off so much time, and that Pietrzyk made the decision to terminate Morris but directed him to deliver the notice to Morris on short notice.[84]  Moreover, when asked if he was surprised by Pietrzyk's decision to terminate Morris, Mayers answered, "No, not really because the conversations up to that point was that -- her documentation was to get rid of her."[85]

Second, Morris was terminated a very short time after she took FMLA leave.  While Morris asked for and apparently received permission to work flex schedules for certain weeks in January and February of 2015, and she took leave to care for her seriously ill daughter on March 3 and 18, 2015, the leave records for Morris that the THHSC has submitted do not show that Morris took any leave in January, February, or March identified as FMLA leave.  The only days on Morris's leave record identified as FMLA leave are April 13, 14, 23-24, and 27.[86]  Morris was terminated on May 8, 2015, less than ten days after the last day she took FMLA leave. Third, the THHSC's contention that Morris was terminated for insubordination conflicts with the notice of termination that Morris received on May 8, 2015, stating that "[a]fter much

_____

[84]Id. at 81:1-83:2, Exhibit 20 to Defendant's MSJ, Docket Entry No. 22-2, p. 181.

[85]Id. at 83:6-10, Exhibit 20 to Defendant's MSJ, Docket Entry No. 22-2, p. 181.

[86]Exhibit 13 to Defendant's MSJ, Docket Entry No. 22-2, p. 55.

-44-

deliberation, it has been determined that you are not suited for the assigned Investigator VI position."[87]  A reasonable jury could conclude from this evidence that the THHSC's stated reason for terminating Morris's employment is a pretext for retaliation for having taken FMLA leave.

### (ii)  Mixed-Motive Alternative

The THHSC argues that Morris cannot prevail under a mixed-motive theory because she cannot show that her FMLA leave motivated OIG's termination decision, and OIG would have terminated Morris's probationary employment regardless of her use of FMLA leave.  For the same reasons stated above in the "Pretext Alternative" analysis, the court concludes that Morris has presented sufficient evidence to create fact issues as to whether the exercise of her FMLA rights was at least a motivating factor in the THHSC's decision to terminate her employment.

The THHSC argues that it is nevertheless entitled to summary judgment because it would have terminated Morris anyway, despite any retaliatory animus.  Asserting that OIG does not tolerate insubordination, and that approximately two months after Morris was terminated, Mayers, too, was terminated for insubordination, the THHSC argues that the same decision to terminate Morris's employment would have been made irrespective of her leave usage.[88]

---

[87]Exhibit 12 to Defendant's MSJ, Docket Entry No. 22-2, p. 53.

[88]Defendant's Reply, Docket Entry No. 27, p. 19 (citing Mayers Deposition, pp. 123:21-124:21, Exhibit 20 to Defendant's MSJ, Docket Entry No. 22-2, p. 191).

Mayers' deposition testimony that he was subsequently discharged for insubordination is not sufficient to carry the THHSC's burden, at least on summary judgment, that Morris would have been terminated irrespective of her use of FMLA leave. Therefore, Defendant's MSJ on Morris's FMLA retaliation claim will be denied.

(b)  FMLA Interference Claim

The FMLA provides, in relevant part, that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided by the FMLA.  29 U.S.C. § 2615(a)(1).  To establish a prima facie interference case, Morris must show that (1) she was an eligible employee, (2) the THHSC was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) the THHSC denied her the benefits to which she was entitled under the FMLA. See DeVoss, 903 F.3d at 490 (citing Caldwell, 850 F.3d at 245).

Asserting that "Morris does not deny that she received all leave requested,"[89] the THHSC argues that "Morris's FMLA interference claim must be dismissed because Morris was not deterred from taking FMLA [leave] and she was not denied any FMLA

---

[89]Defendant's Brief in Support of MSJ, attached to Defendant's MSJ, Docket Entry No. 22-1, p. 14 (citing Morris's Leave Record, Exhibit 13, Docket Entry No. 22-2, pp. 55-56, and Morris Deposition, pp. 79:3-10; 81:2-5, Exhibit 18 to Defendant's MSJ, Docket Entry No. 22-2, p. 90).

leave to which she was entitled."[90]  Citing 29 C.F.R. § 825.300(b),

Morris argues that her FMLA interference claim cannot be dismissed

as a matter of law because

> [s]ummary judgment evidence establishes that [she] was
> not told within the timeframe required by law that her
> application for FMLA eligibility was going to be denied.
> . . . It took Defendant more than two months before it
> notified [her] that she was not qualified.
>
>     In addition, Defendant required Plaintiff to submit
> her FMLA paperwork on multiple occasions though it was
> not necessary and was not required by law.
>
>     This evidence shows that Defendant interfered with
> Plaintiff's rights under the FMLA.[91]

At issue is whether the THHSC denied Morris benefits to which

she was entitled under the FMLA.  Morris asked for and apparently

received permission to work flex schedules for certain weeks in

January and February of 2015 in lieu of taking FMLA leave.  Morris

has cited evidence showing that on January 14, 2015, she asked for

FMLA leave to care for her seriously ill daughter on March 3 and

18, 2015,[92] but while the leave records for Morris that the THHSC

has submitted show that she took leave on these days, they also

---

[90]Id. at 15.

[91]Plaintiff's Response, Docket Entry No. 26, pp. 23-24 (citing
inter alia Campos Garza Deposition, Exhibit D to Plaintiff's
Response, pp. 16:14-17 (acknowledging that the THHSC took over two
months to respond to Morris's initial request for FMLA leave);
p. 193:8-16 (stating that she did not know if Morris's initial
application for FMLA leave was valid), Docket Entry No. 26-4, pp. 4
and 9).

[92]Exhibit B to Plaintiff's Response, Docket Entry No. 26-2,
pp. 11-12.

show that leave was not classified as FMLA leave.[93] Moreover, Morris has submitted records of text messages showing that Mayers denied her request to take FMLA leave on March 18, 2015.[94] Thus, Morris has submitted evidence that contradicts the THHSC's assertion that she received all of the FMLA leave that she requested and was entitled to take. The court concludes therefore that the THHSC is not entitled to summary judgment on Morris's FMLA interference claim.

## V. Conclusions and Order

For the reasons stated in § III, above, Plaintiff Lena D. Morris's Motion for Leave to File Sur-Reply to Defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment (Docket Entry No. 29) is **DENIED as MOOT**.

For the reasons stated in § IV.A, above, the court concludes that THHSC is entitled to summary judgment on Morris's claims for violation of Title VII; and for the reasons stated in § IV.B, above, the court concludes that THHSC is not entitled to summary judgment on Morris's FMLA claims for interference and retaliation. Accordingly, Defendant's Motion for Summary Judgment (Docket Entry No. 22) is **GRANTED in PART and DENIED in PART**.

---

[93]Exhibit 13 to Defendant's MSJ, Docket Entry No. 22-2, p. 55.

[94]Morris Declaration, Exhibit A to Plaintiff's Response, Docket Entry No. 26-1, p. 5 ¶ 22 (citing Attachment 4, Docket Entry No. 26-1, pp. 24-30).

The court concludes that this case is appropriate for mediation or a settlement conference before a Magistrate Judge. If the parties are not able to settle this action within the next thirty (30) days, they will provide the court with the name and contact information of an agreed upon mediator, or a request that the court refer this case to Magistrate Judge Nancy K. Johnson for a settlement conference.

Paragraphs 11 and 12 of the Fourth Amended Docket Control Order (Docket Entry No. 21) are **VACATED**.

**SIGNED** at Houston, Texas, on this 8th day of August, 2019.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE